Jeremy J. Hugus, #7-4630
PLATTE RIVER INJURY LAW
259 South Center Street, #308
Casper, Wyoming 82601
P: (307) 215-9724
F: 1-844-416-9337
E: Hugus@PlatteRiverLaw.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2019 JUN 18  PM 4: 34

STEPHAN HARRIS, CLERK
CASPER

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MARGARET M. KOZAR ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 19CV128-F |
| ) | |
| CASPER MEDICAL CENTER, LLC ) | |
| dba MOUNTAIN VIEW REGIONAL ) | |
| HOSPITAL AND CLINIC ) | |
| ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff and for her complaint against Defendant hereby avers and states as

follows:

## I.    INTRODUCTION

1.    This is an employment discrimination action brought pursuant to WYO. STAT. §§ 27-

9-101 through 105, inclusive; 42 U.S.C. § 621-634 inclusive; 42 U.S.C. § 2000e et seq.; 42 U.S.C. §

1981 et seq.; and all applicable Federal and Wyoming case law.

Receipt # CAS002256
Summons: ___|___ issued
___ not issued

## II.    PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Margaret M. Kozar is and was at all times relevant hereto a citizen of the State of Wyoming and a resident of Casper, Wyoming.

3.      Casper Medical Center, LLC dba Mountain View Regional Hospital and Clinic (hereinafter "Defendant" or "CMC") was at all times relevant hereto a registered Wyoming Limited Liability Company with its principal place of business in the City of Casper, County of Natrona, State of Wyoming.

4.      Defendant CMC is and was at all times relevant hereto a Limited Liability Company formed in the State of Wyoming.

5.      Defendant CMC operates a community healthcare system in Casper, Wyoming and has approximately 200 employees.

6.      Defendant CMC is directly liable for all the acts alleged herein and all employees of CMC acted within the course and scope of their employment for CMC.

7.      At all times relevant hereto, Ms. Kozar was an employee of Defendant CMC until the termination of her employment on July 27, 2017.

8.      Ms. Kozar began her employment with CMC on August 23, 2010 as a certified nursing assistant and transferred to the position of security guard on January 8, 2012.

9.      Within weeks of being hired as a security guard, Ms. Kozar became the lead security officer.

10.     The averments contained herein raise questions of federal law; jurisdiction is proper pursuant to 42 U.S.C. § 1331.

11.     This Court also has pendant jurisdiction over questions of Wyoming State law pursuant to 42 U.S.C. § 1367.

12.     The unlawful acts, statutory violations, negligence, and breaches of duty which give rise to this action were committed in Natrona County within the District of Wyoming; venue is proper in this Court pursuant to 42 U.S.C. § 1391.

### III.     PROCEDURAL REQUIREMENTS

13.     Plaintiff has satisfied all procedural requirements and exhausted her administrative remedies prior to commencing this action. She received her "Right-to-Sue" letter from the EEOC and is filing this complaint within 90 days of receiving the same.

### IV.     FACTS COMMON TO ALL CAUSES OF ACTION

14.     Plaintiff repeats and fully incorporates all previous paragraphs.

15.     On or about August 23, 2010 Defendant CMC hired Ms. Kozar as a Certified Nursing Assistant.

16.     Defendant then approached Ms. Kozar to work in the security department after it learned of her law enforcement background.

17.     On or about December 19, 2011, Defendant offered Ms. Kozar a full time position as a security guard.

18.     On or about January 8, 2012, Ms. Kozar accepted the position as security guard.

19.     Defendant initially paid her $20.95 hourly on a biweekly basis.

20.     Ms. Kozar was an employee of Defendant CMC, and Defendant CMC was her employer for the entire period of time between August 23, 2010 and July 27, 2017.

21.     At all times during her employment with CMC, the Ms. Kozar satisfactorily performed her job duties.

22.     On April 24, 2012, Ms. Kozar received a positive 90-day evaluation performance review and her supervisor commented that she was an "excellent employee."

23.     Ms. Kozar received an overall positive performance evaluation for her Annual Performance Evaluation period from January 1, 2011 to December 31, 2011.

24.     Ms. Kozar received an overall positive performance evaluation for her Annual Performance Evaluation period from January 1, 2012 to December 31, 2012.

25.     Ms. Kozar's October 24, 2016 performance evaluation defines her job title as "Lead Security Officer."

26.     Ms. Kozar received an overall positive performance evaluation on October 24, 2016 with a performance rating of "Always met and frequently exceeded expectations."

27.     Chris Noble, Defendant's Plant Operating Manager, recorded that "overall Margaret is a great employee" on the October 24, 2016 performance evaluation.

28.     Based on positive performance evaluations, during her tenure as lead security officer, Ms. Kozar received several pay raises.

29.     At the time Defendant terminated Ms. Kozar, her salary was $23.64 hourly.

30.     Ms. Kozar again received an overall positive review during a hospital competence validation checklist as a security officer on about March 16, 2017.

31.     Twice during her employment for CMC, Ms. Kozar was named as the Employee of the Month.

32.     From the time Ms. Kozar began to lead the security department in 2012 until her termination, she developed the department substantially by: (1) installing a state of the art camera security system; (2) introducing emergency preparedness to the facility; (3) establishing a gun standard; (4) recruiting qualified security officers, and (5) developing and implementing a security officer training program.

33.     Defendant CMC gave Ms. Kozar an overall positive job review on or about March 16, 2017, just over four months prior to terminating her employment.

4

34. In the winter and spring of 2017, new management at CMC required employees to reapply for the positions they were in – or in some instances apply for different positions at CMC.

35. In or about the spring of 2017, Defendant CMC advertised a position for a lead security officer.

36. Ms. Kozar was a qualified applicant for a promotion to this advertised position since the she was already acting as the lead security officer and Defendant defined or considered here as such.

37. For years prior to her termination and at the time of her termination, Defendant CMC recognized Ms. Kozar as its lead security officer.

38. At the time the Defendant fired Ms. Kozar, she had supervisory duties over other individuals in the security department.

39. The requirements for the advertised lead security officer position were the same duties Ms. Kozar had been responsible for prior to her termination.

40. On or about June 7, 2017, Ms. Kozar applied for the newly advertised lead security officer position with Defendant; Defendant did not hire her to fill the position.

41. As part of the application process, Ms. Kozar accurately disclosed her previous law enforcement experience as being an auxiliary police officer at the Hickory Hills, IL Police Department.

42. On or about July 31, 2017, Ms. Kozar was denied a promotion for the lead security officer position.

43. The lead security officer position would have been a net job promotion for Ms. Kozar since her position prior to July 27, 2017 was hourly and the advertised lead security officer position she applied for was salaried.

5

44.     Dr. Thomas Kopitnik, an individual with ownership interest in Defendant CMC at the time Ms. Kozar applied for the position, told her that Defendant wanted a male for the lead security officer position and not a female.

45.     Defendant's CEO Mike Cowling had also indicated that Defendants intended to fill the lead security officer position with a younger male.

46.     It is believed and therefore alleged that the Defendant created the "new" lead security officer position in order to replace the Plaintiff with a male.

47.     Subsequent to firing the Plaintiff, Defendant continued to seek further applicants for the lead security officer position and ultimately filled the position with a younger, male individual.

48.     The security staff, including the Ms. Kozar, often parked Defendant's security truck in front of Defendant's emergency department for approximately seven years at the specific direction of Dr. Thomas Kopitnik and Jeff Van Horn, the Defendant's former CEO.

49.     Renee Schoyer, Acting Chief Executive Officer, disciplined Ms. Kozar by writing her up with a written reprimand on March 9, 2017 for the security truck parked in the emergency department area.

50.     At the time of the disciplinary action, Ms. Kozar was not at work. Amy Reese, Defendant's Human Resources Manager forced Ms. Kozar to sign the write-up because she was a "supervisor."

51.     Other individuals were not disciplined as a result of the security vehicle being parked at Defendant's emergency department. Indeed, Defendant's management encouraged the security officers to park the vehicle near the emergency department as a deterrent to criminal activity.

52.     The defendant created a hostile work environment by constantly having higher expectations of Ms. Kozar than similarly situated younger male employees.

53. On or about July 27, 2017, the Defendant, through Human Resource manager Amy Reese, terminated the Ms. Kozar's employment with the Defendant.

54. As a pretext for her termination, Defendant, through Human Resource manager Amy Reese, claimed that the Ms. Kozar was dishonest in her application for the lead security officer position.

55. Defendant claimed that the Ms. Kozar's application indicated she had prior experience as a police officer.

56. Ms. Kozar candidly described her employment as an auxiliary police officer.

57. Prior to terminating her employment, Defendant expressed a pattern of preference for male individuals as security officers.

58. Prior to terminating Ms. Kozar, Defendant routinely treated male security officers, including but without limitation male officer Darcy Hill, more favorable that female officers such as Ms. Kozar.

59. After Defendant terminated Ms. Kozar, it terminated the one remaining female security officer, Christie Hargrove, thereby ensuring all its security officers were male.

60. After Defendant fired Ms. Kozar, it hired Tim Toth, a male, to replace her as lead security officer

61. Upon hiring Mr. Toth to replace Ms. Kozar, Defendant paid him as a salaried employee even though it paid Ms. Kozar as an hourly employee for the exact same position at the time she was fired.

62. Mr. Toth's job responsibilities as defined by the Defendant were fewer and less demanding than the job duties assigned to Ms. Kozar at the time she was fired.

7

63. Specifically, at the time she was fired, Ms. Kozar was required to attend numerous community safety meetings involving county law enforcement; Mr. Toth was not required to do these tasks.

64. Prior to terminating Ms. Kozar, Defendant, often through HR manager Amy Reese, actively bullied, intimidated, and harassed Ms. Kozar.

65. Defendant bullied, intimidated and harassed the Plaintiff by asking that she use intimidation tactics to manage security officers who were subordinate to her.

66. Defendant bullied, intimidated and harassed Ms. Kozar when HR manager Amy Reese used profanity in describing statements Ms. Kozar made in her application for the lead security officer position.

67. Defendant bullied, intimidated and harassed Ms. Kozar when HR manager Amy Reese bragged to other employees whenever she terminated employees at Defendant CMC's facility.

68. Defendant bullied, intimidated and harassed Ms. Kozar when in 2016 HR Manager Amy Reese told Ms. Kozar she would "make her life a living hell" when Ms. Kozar approached Defedant's HR department on behalf of another security officer to address his incorrect paycheck.

69. Defendant bullied, intimidated, and harassed Ms. Kozar, thereby creating a hostile work environment for her, because she is a woman.

70. At the time Ms. Kozar was fired, she was able to and was satisfactorily performing her job.

71. At the time Ms. Kozar was fired, she was employed full time with Defendant and entitled to certain benefits available to all Defendant's employees.

72. At the time Ms. Kozar was fired, all Defendant's employees regularly scheduled to work 24 or more hours per week were eligible to accrue short term leave time (STL).

8

73.    At the time Ms. Kozar was fired, she was entitled to certain medical benefits including group health, dental and vision insurance plans covering hospitalization, physician and dentist fees, prescriptions and diagnostic charges.

74.    At the time Ms. Kozar was fired, all Defendant's employees were entitled to up to three days paid bereavement leave in the event of a death in her immediate family.

75.    At the time Ms. Kozar was fired, all employees who worked 24 or more hours per week were entitled to life insurance in the amount of twice their salary, up to $50,000.

76.    Defendant's employees can participate in a retirement plan, to wit: Mountain View Regional Hospital's 401(k) or Roth 401(k) retirement investment plan provided they are 21 years of age and have completed the 90-day waiting period.

77.    The purpose of this plan is to provide retirement income that will supplement employee' social security benefits and personal savings and features pre-tax contributions by payroll deduction, company match on a portion of your contributions (if authorized by the Board), tax deferred investment earnings, options for self-directed investment management and individualized quarterly reports.

78.    At the time Ms. Kozar was fired, she had completed the 90-day waiting period and was otherwise eligible to participate in the retirement plan.

79.    At the time Ms. Kozar was fired, she was eligible for certain other benefits offered by the defendant including paid time off and workers compensation benefits.

## V.    FIRST CAUSE OF ACTION
### (Gender Discrimination – 42 U.S.C. §§ 2000e through 2000e-2)

80.    Plaintiff repeats and fully incorporates all previous paragraphs.

81.    Plaintiff is a woman.

82.    Plaintiff is a member of a protected class under 42 U.S.C. §§ 2000e through 2000e-2.

9

83.     Plaintiff was performing her job in a satisfactory matter when Defendant CMC fired her on or about July 27, 2017.

84.     When Defendant CMC fired Plaintiff it was aware of Plaintiff's gender and that she was a member of a protected class under 42 U.S.C. §§ 2000e through 2000e-2.

85.     Prior to firing the Plaintiff, Defendant CMC refused to promote her to an advertised position of lead security officer and instead hired a male for the position.

86.     When Defendant CMC advertised the job position of lead security officer, the Defendant sought out a male candidate to fill the position.

87.     At the time Defendant CMC terminated Plaintiff she was doing the tasks required of the lead security officer.

88.     Plaintiff's title at the time she was terminated was lead security officer as reflected in her performance reviews.

89.     Despite the fact that Plaintiff was performing her job in a satisfactory manner, Defendant terminated her in part because she was a woman.

90.     Defendant CMC bullied, intimidated and harassed the Plaintiff and failed to elevate and/or retain her position as lead security officer, in part, due to the fact she is a woman.

91.     The Defendant, through its CEO Chris Noble, and though an individual with a financial ownership role in the Defendant, Dr. Thomas Kopitnik, communicated to the Plaintiff that the Defendant desired a male fill the position as lead security officer.

92.     After firing Plaintiff, Defendant CMC filled her position with a male.

93.     In refusing to retain Plaintiff's employment, and hiring a male to replace her position, Defendant CMC unlawfully discriminated against Plaintiff in violation of 42 U.S.C. §§ 2000e through 2000e-2, inclusive, and acted with disregard for Plaintiff's civil rights and protections thereunder.

10

94.     As a direct and proximate result of Defendant CMC's unlawful discriminatory acts, errors, and omissions, Plaintiff has sustained past and future injuries and damages, to be proven at trial, which she is entitled to recover.

95.     Defendant committed its unlawful discriminatory acts, errors, omissions as enumerated hereinabove in a manner it knew or reasonably should have known created a high probability of serious damages and harm to Plaintiff.

96.     Because Defendant's actions, errors, and omissions were willful and wanton or reckless in nature and with disregard for Plaintiff's emotional and financial well-being, Plaintiff is entitled to punitive damages.

## VI.     SECOND CAUSE OF ACTION

### (Gender Discrimination – WYO. STAT. §§ 27-9-101 through 105)

97.     Plaintiff repeats and fully incorporates all previous paragraphs.

98.     Plaintiff is a woman.

99.     At all times relevant hereto Defendant CMC was Plaintiff's employer under WYO. STAT. §§ 27-9-105.

100.    Plaintiff was performing her job in a satisfactory matter when Defendant CMC fired her on or about July 27, 2017.

101.    When Defendant CMC fired Plaintiff they were aware of Plaintiff's gender and that she was a member of a protected class under WYO. STAT. §§ 27-9-105 et seq.

102.    Prior to firing the Plaintiff, Defendant CMC refused to promote her to an advertised position of lead security officer and instead hired a male for the position.

103.    When Defendant CMC advertised the job position of lead security officer, the Defendant sought out a male candidate to fill the position.

104.    Plaintiff's title at the time she was terminated was lead security officer as reflected in her performance reviews.

11

105.    Despite the fact that Plaintiff was performing her job in a satisfactory manner, Defendant terminated her in part because she was a woman.

106.    Defendant CMC bullied, intimidated and harassed the Plaintiff and failed to elevate and/or retain her to the position as lead security officer, in part, due to the fact she is a woman.

107.    The Defendant, through its CEO Chris Noble and though an individual with a financial ownership role in the Defendant, Dr. Thomas Kopitnik, communicated to the Plaintiff that the Defendant desired a male fill the position as lead security officer.

108.    After firing Plaintiff, Defendant CMC filled her position with a male.

109.    In refusing to retain Plaintiff's employment, and hiring a male to replace her position, Defendant CMC unlawfully discriminated against Plaintiff in violation of WYO. STAT. §§ 27-9-105, inclusive, and acted with disregard for Plaintiff's civil rights and protections thereunder.

110.    As a direct and proximate result of Defendant CMC's unlawful discriminatory acts, errors, and omissions, Plaintiff has sustained past and future injuries and damages, to be proven at trial, which she is entitled to recover.

111.    Defendant committed its unlawful discriminatory acts, errors, omissions as enumerated hereinabove in a manner it knew or reasonably should have known created a high probability of serious damages and harm to Plaintiff.

112.    Because Defendant's actions, errors, and omissions were willful and wanton or reckless in nature and with disregard for Plaintiff's emotional and financial well-being, Plaintiff is entitled to punitive damages.

## VII.    THIRD CAUSE OF ACTION
### (Age Discrimination 29 USC 621-634)

113.    Plaintiff repeats and fully incorporates all previous paragraphs.

114.    Plaintiff is a female over the age of 40 years.

12

115.    Plaintiff is a member of a protected class under 29 U.S.C. §§ 621 through 634.

116.    Plaintiff was performing her job in a satisfactory matter when Defendant CMC fired her on or about July 27, 2017.

117.    When Defendant CMC fired Plaintiff it was aware of Plaintiff's age and that she was a member of a protected class under 29 U.S.C. §§ 621 through 634.

118.    Prior to firing the Plaintiff, Defendant CMC refused to promote her to an advertised lead security officer position and instead hired a younger male for the position.

119.    Defendant terminated the Plaintiff on July 27, 2017 one month before she turned 50 years old.

120.    Subsequent to terminating the Plaintiff, Defendant hired a lead security officer who was younger than her.

121.    As a direct and proximate result of Defendant CMC's unlawful discriminatory acts, errors, and omissions, Plaintiff has sustained past and future injuries and damages, to be proven at trial, which she is entitled to recover.

122.    Defendant committed its unlawful discriminatory acts, errors, omissions as enumerated hereinabove in a manner it knew or reasonably should have known created a high probability of serious damages and harm to Plaintiff.

123.    Because Defendant's actions, errors, and omissions were willful and wanton or reckless in nature and with disregard for Plaintiff's emotional and financial well-being, Plaintiff is entitled to punitive damages.

## VIII.   FOURTH CAUSE OF ACTION
### (Age Discrimination Wyo. Stat. §§ 27-9-105)

124.    Plaintiff repeats and fully incorporates all previous paragraphs.

125.    Plaintiff is a female over the age of 40 years.

13

126.     Plaintiff is a member of a protected class under WYO. STAT. §§ 27-9-105.

127.     Plaintiff was performing her job in a satisfactory matter when Defendant CMC fired her on or about WYO. STAT. §§ 27-9-105.

128.     When Defendant CMC fired Plaintiff it was aware of Plaintiff's age and that she was a member of a protected class under WYO. STAT. §§ 27-9-105.

129.     Prior to firing the Plaintiff, Defendant CMC refused to promote her to an advertised lead security officer position and instead hired a younger male for the position.

130.     Defendant terminated the Plaintiff on July 27, 2017 one month before she turned 50 years old.

131.     Subsequent to terminating the Plaintiff, Defendant hired a lead security officer who was younger than her.

132.     As a direct and proximate result of Defendant CMC's unlawful discriminatory acts, errors, and omissions, Plaintiff has sustained past and future injuries and damages, to be proven at trial, which she is entitled to recover.

133.     Defendant committed its unlawful discriminatory acts, errors, omissions as enumerated hereinabove in a manner it knew or reasonably should have known created a high probability of serious damages and harm to Plaintiff.

134.     Because Defendant's actions, errors, and omissions were willful and wanton or reckless in nature and with disregard for Plaintiff's emotional and financial well-being, Plaintiff is entitled to punitive damages.

## IX.     FIFTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

135.     Plaintiff repeats and fully incorporates all previous paragraphs.

14


## XI.     PRAYER FOR RELIEF

WHEREFORE Plaintiff Margaret M. Kozar respectfully requests this Court enter judgment against Defendant Casper Medical Center, LLC and award her the following relief:

A.     Pecuniary and compensatory damages, including back pay, lost employee benefits, and prejudgment interest, compounded annually;

B.     Front pay for future lost wages and benefits;

C.     Reimbursement for increased tax liability on any lump damages payment;

D.     Damages for lost earning capacity; loss of reputation; loss of enjoyment and quality of life; emotional pain, mental anguish, distress, and suffering;

E.     Punitive damages for defendants extreme, reckless, outrageous, and wrongful conduct;

F.     Litigation costs and expenses and attorney's fees as provided for by federal statue;

G.     An award of such other equitable remedies or relief as the Court find just and proper.

RESPECTFULLY SUBMITTED this ⁄8 day of June, 2019.

Jeremy J. Hugus, #7-4630
PLATTE RIVER INJURY LAW
259 South Center Street, #308
Casper, Wyoming 82601
P: (307) 215-9724
F: (307) 237-1570
E: Hugus@PlatteRiverLaw.com

*Attorney for Plaintiff*

16